UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOUGLAS C. DUNAWAY,

                         Plaintiff,

     -against-

MPCC CORP. and JOSEPH URBINATI, JR.,
individually,

                       Defendants.

No. 12-cv-7609 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

         Plaintiff asserts failure-to-hire and retaliation claims under the Age Discrimination in Employment Act of 1967 ("ADEA"). Before the Court are Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment. For the following reasons, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

         Plaintiff asserts age discrimination and retaliation claims in connection with his application for a position as a Senior Project Manager at Defendant MPCC Corp. ("MPCC"), a general contractor based in New Rochelle, New York. MPCC placed advertisements for the Senior Project Manager position in the *New York Times*, Monster.com, and Craigslist.com that ran from as early as May 8, 2011 through at least November 15, 2011. (Pl.'s 56.1 ¶¶ 7-8, ECF No. 55; Reiter Decl. Ex. B at 169:12-21, ECF No. 38-2.) Defendant Joseph Urbinati, Jr., President of MPCC, conducted all applicant interviews and made all pertinent hiring decisions. (Pl.'s 56.1 ¶¶ 15-19.) Plaintiff applied for the position twice by submitting his resume to MPCC

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/17/15

on May 14, 2011 and July 14, 2011.  (*Id.* ¶ 14.)  Urbinati arranged to interview Plaintiff on July 20, 2011.[1]  Plaintiff was 65 years old at the time.  (*Id.* ¶ 2.)

According to Plaintiff, Urbinati started the interview by stating that he was looking for a "long-term" employee of "10 to 15 years," and then asked Plaintiff his age.  (Sapir Decl. Ex. A, 65:23-66:4, ECF No. 48-1.)  Plaintiff responded that he was "up in years" and was "in good physical condition" but did not give a number.  (*Id.* at 67:2-12.)  Urbinati asked Plaintiff if he was "capable of withstanding the vigors [*sic*] of the position."  (*Id.* at 67:23-25.)  Urbinati also told Plaintiff that his father had begun working less in his late 60s and no longer ran the company.  (*Id.* at 65:7-11; Pl.'s Decl. ¶ 10, ECF No. 49.)  It is undisputed that, during the interview, Urbinati asked Plaintiff what salary range he expected, and Plaintiff requested a salary between $65,000 and $95,000.  (Pl.'s 56.1 ¶ 59.)

Urbinati's account agrees in some respects.  Urbinati admits that he said he was looking for a "long term" employee (Urbinati Decl. ¶ 39, ECF No. 39), and that he asked Plaintiff how long he intended to continue working as a Senior Project Manager.  (Reiter Decl. Ex. A at 79:23-80:13, 172:20-22, 173:4-12.)  But Urbinati denies that he asked Plaintiff his age, discussed his father, or stated that he was looking for an employee who would work for MPCC for ten to fifteen years.  (*Id.* at 80:21-24, 82:19-21; Urbinati Decl. ¶ 38.)  Urbinati added that during the interview, he asked about Plaintiff's work experience, including Plaintiff's seven-year tenure at

---

[1] Plaintiff's assertion that MPCC "had a reputation in the local construction industry for extending offers of employment to applicants that it asked to interview for a position," finds no support in admissible evidence.  (Pl.'s Opp. at 17, ECF No. 44.)  Plaintiff cites to one line in the deposition of Maurice Gawendo, a former Senior Project Manager at MPCC, in which Gawendo testifies that a man named Sol told him, "from what I know of MPCC, I know that when you interview, you probably will be hired."  (Sapir Decl. Ex. E at 24:17-19, ECF No. 48-5.)  This statement is inadmissible hearsay, and in any event is simply too vague and ambiguous to support an inference of such specificity.  This is particularly true in light of the wealth of evidence to the contrary.  For example, Urbinati testified, "I've been in bad interviews," that he has written "N-g" on resumes of interviewees whom he does not want to hire, and that "many times" he has walked out of an interview and "just throw[n] the resume in the garbage" if the interview went poorly.  (Reiter Decl. Ex. A at 124:16-125:4, 271:10, ECF No. 38-1.)  Plaintiff did not follow up on "Sol's" comment with Gawendo.  Nor did Plaintiff ask any of the witnesses about MPCC's reputation.

James A. Jennings, Co.  Plaintiff described his role at James A. Jennings as more of an "operations manager" than merely a senior project manager and characterized himself as the "heartbeat of that office and the heartbeat of that company" and the "nuts and bolts of the operation."  (*Id.* at 123:15-24, 178:21-24, 180:6-7, 180:12-15.)

Urbinati testified that Plaintiff's interview was "good," "pretty good," or "average"—not "terrible," but not "very good."  (*Id.* at 217:2-15, 218:3-6; Urbinati Decl. ¶ 51.)  Consistent with this assessment, Urbinati wrote "not bad" on Plaintiff's resume during the interview.  (*See* Reiter Decl. Ex. G, ECF No. 38-7.)  Urbinati testified that he suspected that Plaintiff was being dishonest about his experience at James A. Jennings, because if he were truly as integral to the operation as he claimed, he would not have been let go and he would not have requested such a low salary.  (Reiter Decl. Ex. A at 123:15-24, 178:15-179:3, 179:24-180:15.)  Urbinati further testified that his overall impression was that Plaintiff would not be a good fit or successful at MPCC because of his communication style and demeanor.  Urbinati explained that the Senior Project Manager's primary responsibility is to "deal mostly with superintendents that run the projects in the field" and make sure that the items the superintendents request "are there on time."  (*Id.* at 36:12-14.)  In Urbinati's words, the project manager should "push the field;" the field should not have to "drag[] the project manager along."  (*Id.* at 159:9-21.)  Urbinati testified that he typically asks candidates for the Senior Project Manager position questions designed to assess "how they're going to communicate with the field guys, how they're going to handle subcontractors, whether they like dealing with phones or emails, how were they with Walkie-Talkies."  (*Id.* at 150:4-14.)  Although he struggled to pinpoint the specific phrases Plaintiff used or verbalize the specific mannerisms that Plaintiff exhibited, Urbinati felt that Plaintiff's personality and communication style would be ineffective at MPCC.  He explained

3

that MPCC's superintendents, Ryan DiNapoli, Lenny Zampaglione, Kenny Bonnes, and Daryl Walton, would complain frequently if a Senior Project Manager was not pushing a job forward, were "yellers, screamers," "rough around the edges," "very demanding," "I got to have it now, I can't wait until tomorrow," and would "bark at everyone." (*Id.* at 36:12-24, 68:20-21, 69:2-9, 69:22-25, 71:16-72:22, 158:5-160:16.) MPCC's former Senior Project Manager Maurice Gawendo and MPCC's Corporate Secretary Debra Cornett largely corroborated Urbinati's characterization of MPCC's superintendents' style of communication.[2] (*See* Reiter Decl. Ex. B at 64:21-73-24; Reiter Decl. Ex. D at 56:16-61:12, ECF No. 38-4.)

Urbinati testified that he considered Plaintiff's candidacy over a weekend, and within three to four days of the interview, Urbinati had decided not to hire Plaintiff. (*Id.* at 67:15-68:8.) Plaintiff called MPCC a week after his interview and spoke to Cornett. (Reiter Decl. Ex. A at 73:4-75:15.) Urbinati testified that when he heard that Plaintiff was on the line, he signaled to Cornett that he had decided not to hire Plaintiff. (*Id.*; Urbinati Decl. ¶ 60.) No one, however, notified Plaintiff of Urbinati's decision.

Plaintiff filed a complaint with the NYSDHR and the EEOC on August 29, 2011 alleging age discrimination. (Defs.' 56.1 ¶¶ 79-80.) MPCC received a copy of the complaint in that matter on September 6, 2011. (*Id.* ¶ 86.)

MPCC continued to advertise for the Senior Project Manager position and on October 17, 2011, Urbinati interviewed Maurice Gawendo and Michael Fitzmaurice. (Pl.'s 56.1 ¶ 95.)

---

[2] No issue of fact is raised by the affidavit of former Senior Project Manager Michael Fitzmaurice, submitted by Plaintiff in opposition to Defendants' motion. (*See* Sapir Decl. Ex. O, ECF No. 48-15.) Fitzmaurice does not appear to have been deposed in this matter, so his statements have not been subject to development or cross-examination. But even taken at face value, they do not raise a material dispute. Fitzmaurice states in his affidavit that during his time at MPCC, Zampaglione and Walton never yelled, screamed, or barked orders at him, and that they were generally no different than superintendents with whom he had worked in the past. (*Id.*) The affidavit does not speak to whether Zampaglione, Walton, or any other MPCC superintendents were, in fact, forceful, demanding, loud, no nonsense, or rough around the edges, nor does it contradict the testimony of Urbinati, Gawendo, or Cornett. (*See id.*)

Urbinati hired both candidates and they started on October 31, 2011.  (*Id.* ¶ 96; Defs.' 56.1

¶¶ 104, 118.)  They were 64 and 58 years old at the time, respectively.  (*Id.* ¶¶ 105, 119.)

Urbinati described Fitzmaurice as a "very good communicator" and said that he felt more

comfortable with Fitzmaurice's communication style, his "mannerisms," his answers, the "way

he spoke," and the fact that he "looked [Urbinati] in the eyes."  (Reiter Decl. Ex. A at

92:12-94:18.)  After he walked out of the interview with Fitzmaurice, he said "we're going to

hire him."  (*Id.*)  When pressed, Urbinati had difficulty verbalizing specific mannerisms that he

liked, but mentioned that it had to do with "the way he talked; the way he moved his head; the

way he moved his shoulders; the way he moved his hands."  (*Id.* at 95:2-5.)  Similarly, Urbinati

assessed Gawendo as "interview[ing] well" and having a "strong, gruffy [*sic*] type of

personality."  (*Id.* at 148:16-149:8.)  He liked that Gawendo "carried himself well," was

"assertive" and "no nonsense," "stated facts, [and] gave [Urbinati] a lot of answers to questions

that [Urbinati] liked."  (*Id.*; Urbinati Decl. ¶ 78.)  Urbinati told Gawendo, "I wish I had gotten

your resume 10 years ago."  (Reiter Decl. Ex. A at 148:17-18; Urbinati Decl. ¶ 80.)

Plaintiff, in Urbinati's estimation, was "a whole different feel," was "a little unsure of

himself," "wasn't as good of a communicator," and "lacked the assertiveness to manage difficult

subcontractors or ensure that construction project deadlines would be met."  (Reiter Decl. Ex. A

at 95:15-24; Urbinati Decl. ¶ 58.)

On February 12, 2012, the NYSDHR found that there was no probable cause to believe

that MPCC discriminated against Plaintiff on the basis of age.  (Defs.' 56.1 ¶ 128.)  Urbinati

terminated Fitzmaurice on October 12, 2012 because he had repeatedly made mistakes and

missed deadlines over a long period of time.  (Urbinati Decl. ¶ 90.)  In February 2013, Urbinati

hired a third Senior Project Manager, Andrew Cardinale, who was 41 years old.  (*Id.* ¶ 88;

Cornett Decl. ¶ 33.)  Urbinati terminated Gawendo on March 18, 2014 because he upset MPCC's largest client on a project.  (Urbinati Decl. ¶ 93.)  Andrew Cardinale is still with MPCC. (Cornett Decl. ¶ 34.)

### STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted).  In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.  *Anderson*, 477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial."  *Id.* at

250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the records" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

When both sides have moved for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *see, e.g.*, *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981).

## DISCUSSION

**I.    Defendants Are Entitled to Summary Judgment on Plaintiff's Failure-to-Hire Claim**

The *McDonnell-Douglas* burden-shifting framework applies to ADEA claims on a motion for summary judgment. *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194-95 (2d Cir. 2007). A plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) he is over 40; (2) he was qualified for the job for which he applied; (3) he was not hired; and (4) the failure to hire occurred under circumstances raising an inference of age discrimination. *Id.* at 195. The burden then shifts to the defendants to produce evidence of a legitimate, nondiscriminatory reason for the failure to hire. *Id.* This is a burden of production;

7

the plaintiff retains the burden of persuasion at all times.  *Id.*  If the defendants satisfy their burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendants' proffered reason is pretextual and that discrimination was the but-for cause for the employment action.  *Id.*; *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).  *See generally* David Sherwyn & Michael Heise, *The* Gross *Beast of Burden of Proof: Experimental Evidence on How the Burden of Proof Influences Employment Discrimination Case Outcomes*, 42 Ariz. St. L.J. 901, 925-26 (2010) (explaining that *Gross* eliminated the "motivating factor" standard of proof for ADEA cases).  Defendants' motion must be granted, and Plaintiff's cross-motion must be denied, because Plaintiff has failed to establish a *prima facie* case of discrimination, Defendants have articulated legitimate, nondiscriminatory reasons for their failure to hire Plaintiff, and no reasonable jury could find that the proffered reasons are a pretext for age discrimination.

> A.  *Prima Facie* Case

Defendants do not dispute the first three elements of Plaintiff's *prima facie* case.  On the fourth and final element, however, Plaintiff has failed to adduce evidence from which a reasonable jury could infer discrimination.  Although the Senior Project Manager position remained open for a period of several months after Plaintiff's interview, Urbinati ultimately hired Gawendo, who was 64—one year younger than Plaintiff.[3]  *O'Connor v. Consol. Coin Caterers*

---

[3] Plaintiff urges that Urbinati hired Gawendo temporarily as "window dressing" to insulate Defendants from ADEA liability, but arrives at this conclusion only through rank speculation.  The length of Gawendo's tenure raises no suspicions.  The "mere fact" of a "brief employment gives little support to the inference that his employment was a subterfuge to disguise age discrimination."  *McCarthy v. N.Y.C. Tech. Coll. of City Univ. of N.Y.*, 202 F.3d 161, 165 (2d Cir. 2000).  That said, Gawendo's tenure was far from brief.  MPCC retained Gawendo for more than two years—until he was terminated for upsetting one of MPCC's biggest clients.  *Cf. id.* (finding that a "brief" employment of five months was insufficient to dispute the bona fides of the hiring of an older replacement).  Gawendo outlasted Fitzmaurice, a substantially younger employee who joined MPCC at the same time.  *Id.*  None of the attendant circumstances suggest litigation posturing.  *Cf., e.g., Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 561-62 (10th Cir. 1996) (finding that the appointment of an older employee was suspicious where the replacement employee testified that he was "surprised" to receive the appointment because he had openly expressed his intention to retire in the near term).  Plaintiff argues that Defendants "suspiciously" stopped advertising for the Senior Project

*Corp.*, 517 U.S. 308, 312-13 (1996) ("[T]he prima facie case requires '*evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . .*' In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977))); *see also Eng*, 1995 WL 469704, at *2-3. It is no wonder the NYSDHR found no probable cause to believe that Plaintiff had suffered age discrimination.

Urbinati's questions and comments during the interview do not show age discrimination. The Court assumes for purposes of deciding this motion that Urbinati asked Plaintiff his age, indicated that he was looking for a "long-term" employee to remain with the company for "ten to fifteen" years, mentioned that his father worked part-time in his late sixties, and asked Plaintiff whether he was "up to" the "vigors [*sic*]" of the job and how long he intended to continue working in the construction industry. Notwithstanding the oblique references to age, the content of the questions suggests only that Urbinati sought to understand whether Plaintiff intended to retire in the short term. Urbinati moreover explained that this was his intention, and no other evidence undermines his explanation. (*See* Reiter Decl. Ex. A at 79:23-80:13; *id.* at 172:20-22 (reflecting Urbinati's testimony that he generally asks interviewees how long they plan to work in the construction because he does not "want them coming to work here and waking up one

---

Manager position the day before Gawendo was interviewed. However, this is flatly untrue, as advertisements ran for at least thirty days beyond that date. And even if it *were* true, it would raise suspicions only if Defendants somehow knew Gawendo's age before the interview—a proposition that finds no support in the record. Plaintiff adduced no evidence that Urbinati believed hiring Gawendo would put him in a better litigation posture or that this motivated him to hire Gawendo. The only evidence that supports Plaintiff's theory is the fact that Gawendo was interviewed and hired after Defendants learned of Plaintiff's NYSDHR charge. But a scintilla of tenuous circumstantial evidence such as this is insufficient to survive a summary judgment motion. *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (citing *Anderson*, 477 U.S. at 252). Plaintiff's claim of litigation posturing amounts to nothing more than naked conjecture. *Eng v. Beth Israel Med. Ctr.*, No. 93 CIV. 3605 (RPP), 1995 WL 469704, at *2-3 (S.D.N.Y. Aug. 7, 1995).

morning and saying 'I really want to be a stockbroker'"); *id.* at 173:4-12 (reflecting Urbinati's testimony describing an instance in which one of his employees quit MPCC and left the construction industry on one day's notice).)  This is an economic concern.  "The ADEA aims to prevent adverse employment decisions grounded in 'inaccurate and stigmatizing stereotypes' about older workers' '*productivity and competence*.'"  *Chapotkat v. County of Rockland*, No. 14-1457-CV, 2015 WL 1449361, at *2 (2d Cir. Apr. 1, 2015) (summary order) (emphasis added). "[E]mployment decisions driven by factors that are empirically intertwined with age are not discriminatory so long as they are motivated by 'some feature other than the employee's age.'" *Id.* (alteration in original) (quoting *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997)).  The Second Circuit has thus held that "decisions motivated by economic concerns do not violate the ADEA."  *Id.* (citing *Criley*, 119 F.3d at 105).  None of Urbinati's questions "reflect any age-based stereotype of belief that older [employees] are less competent than younger ones."  *Criley*, 119 F.3d at 105.  "Remarks relating to retirement or transition planning are insufficient to defeat a motion for summary judgment in an ADEA case."  *Fried v. LVI Servs., Inc.*, No. 10 CIV. 9308 JSR, 2011 WL 4633985, at *9 (S.D.N.Y. Oct. 4, 2011) (collecting cases and dismissing an ADEA claim on summary judgment where the employer said to the plaintiff, "Burt, you're 71 years of age, how long do you expect to work," "what if you get hit by a bus," and "we have to plan for the future," reasoning that the comment's own terms, "what if you get hit by a bus," showed that the comment reflected no age bias), *aff'd*, 500 F. App'x 39 (2d Cir. 2012); *see also Chapotkat v. County of Rockland*, No. 11-CV-06209 NSR, 2014 WL 1373531, at *7 (S.D.N.Y. Apr. 4, 2014) ("[I]t is not improper for an employer to inquire as to the candidate's retirement plans."), *aff'd*, 2015 WL 1449361.  By their own terms, Urbinati's questions and comments indicate a concern about whether Plaintiff intended to retire and, if so,

10

how soon.  No evidence, direct or circumstantial, raises an inference of age bias; accordingly, the failure to hire claims must be dismissed.

      B.      *Legitimate, Nondiscriminatory Reasons for the Failure to Hire*

Even assuming *arguendo* that Plaintiff established a *prima facie* case, Defendants proffer legitimate, nondiscriminatory reasons for their decision not to hire Plaintiff, and Plaintiff has failed to show those reasons are a pretext for discrimination.  An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *DeLuca v. Allied Domecq Quick Serv. Rests.*, No. 03-CV-5142(JFB)(AKT), 2006 WL 1662611, at *9 (E.D.N.Y. June 13, 2006) (internal quotation marks omitted).  As the Second Circuit has explained:

> "[T]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview."  At the same time, we have also cautioned that "an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion."  This is because "[a]ny defendant can respond to a [discrimination charge] with a claim of some subjective preference or prerogative and, if such assertions are accepted, prevail in virtually every case."  Accordingly, an "employer's explanation of its reasons must be clear and specific" in order to "afford the employee a full and fair opportunity to demonstrate pretext."  Where an employer's explanation, offered in clear and specific terms, "is reasonably attributable to an honest even though partially subjective evaluation of . . . qualifications, no inference of discrimination can be drawn."

*Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 104-05 (2d Cir. 2001) (citations omitted) (all but the first alteration in original).

Here, Urbinati testified that (1) he thought that Plaintiff's personality, demeanor, communication style, and lack of assertiveness would not be efficacious at MPCC, and (2) he sensed that Plaintiff was dishonest about his work experience.

First, Urbinati was reasonably specific about why and how Plaintiff's communication style and demeanor were ill-suited to MPCC.  Assertiveness is a clear and specific trait, notwithstanding that it eludes quantification.  Urbinati explained that MPCC had a

"high-pressure, fast-track" culture and that MPCC superintendents Zampaglione, DiNapoli,

Bonnes, and Walton, who regularly interact with Senior Project Managers, were "aggressive,"

"demanding," "forceful," and prone to "yell[ing]" and "bark[ing] orders."  Plaintiff's phrases,

mannerisms, and demeanor in the interview indicated to Urbinati that he was "unsure of

himself," lacked assertiveness, and was not as good of a "communicator" as Gawendo or

Fitzmaurice.  Urbinati concluded after days of deliberation that Plaintiff was not a good fit for

this reason.  This is legitimate and nondiscriminatory.  *Pasha v. William M. Mercer Consulting,*

*Inc.*, No. 00 CIV.8362 RWS, 2004 WL 188077, at *9 (S.D.N.Y. Feb. 2, 2004) (holding that the

defendant's employees' evaluations of the plaintiff's marketing abilities, "fit," and

communication skills based on an interview were legitimate, nondiscriminatory reasons for the

failure to hire), *aff'd sub nom. Pasha v. William M. Mercer Inv. Consulting, Inc.*, 135 F. App'x

489 (2d Cir. 2005) (summary order).  And as described in the pretext section, *infra*, there is no

evidence that Urbinati's opinion was not honestly held.

Dishonesty about work experience is also a clear and specific basis for rejecting an

applicant, and Urbinati provided a concrete example.  Urbinati testified that he suspected that

Plaintiff exaggerated his role at James A. Jennings, Co.  Plaintiff described himself as the

"heartbeat" or the "nuts and bolts" of the company and characterized his role as more of an

"operations manager" than merely a senior project manager.  But, as Urbinati explained, this did

not ring true because if Plaintiff was as important to James A. Jennings, Co. as he claimed, he

would not have been let go and he would have requested a much higher salary.  "Perceived

dishonesty" or lack of candor is a legitimate, nondiscriminatory reason for a failure to hire.  *Bind*

*v. City of New York*, No. 08 CIV. 11105 RJH, 2011 WL 4542897, at *18 (S.D.N.Y. Sept. 30,

2011). And again, as discussed in the pretext section, *infra*, there is no evidence that Urbinati's opinion was not honestly held. Defendants have satisfied their burden of production.

C.      *Pretext for Discrimination*

Plaintiff has failed to establish that Defendants' proffered reasons are a pretext for age discrimination. Under the ADEA, proof that age was a "motivating factor" is necessary but not sufficient to maintain a claim. Rather, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross*, 557 U.S. at 177-78. That said, Plaintiff need not prove that age was the sole or even the principal factor in the decision. *Renz v. Grey Adver., Inc.*, 135 F.3d 217, 223 (2d Cir. 1997) (finding that the district court erred by instructing the jury that the plaintiff must prove "age was the real reason"). "[An employment discrimination] plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext for discrimination, either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both." *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1339 (2d Cir. 1997).[4]

Here, there is no evidence that Defendants' assertiveness justification was pretextual or an application of an unlawful stereotype. Assertiveness is a personality trait. An employer may perhaps run afoul of the ADEA if he uses age as a proxy for lack of assertiveness.[5] *See Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 201 (2d Cir. 1999) ("Had [the defendant]

---

[4] Although some courts interpret *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.") as abrogating *Fisher*, the Second Circuit in *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 155 (2d Cir. 2000), clarified that the two opinions stand for the same proposition. This Court agrees that *Fisher* is still good law, but the distinction is immaterial because Plaintiff fails to establish pretext.
[5] Plaintiff raises these arguments with respect to whether Defendants' proffered reasons are legitimate and nondiscriminatory. The Court views the issue more as one of pretext. But the conclusion is the same regardless of whether analyzed in connection with the second or third step of the *McDonnell Douglas* framework.

claimed that it terminated [the plaintiff] because of a characteristic stereotypically associated with age—for example, because he was 'unable to keep up with the times'—and had [the plaintiff] shown that reason to be pretextual, our conclusion might be different.  The perception that [the plaintiff] had interpersonal problems . . . does not reflect such stereotypical thinking."); *see also Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir. 2007) (finding that a reasonable jury could infer discrimination based on the employer's remarks to the effect that a younger candidate would be better suited to attract the younger tenants that the employer sought to attract), *abrogated on other grounds by Gross*, 557 U.S. 167; *Duffy v. Wheeling Pitt. Steel Corp.*, 738 F.2d 1393, 1397 (3d Cir. 1984) (finding sufficient evidence to raise an inference of discrimination where the evidence included, *inter alia*, a comment that the employers "were anxious to get younger and more aggressive people in the field"), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).  But Urbinati did not simply assume based on Plaintiff's age that he lacked assertiveness.  The undisputed facts are that Urbinati (1) asked questions designed to assess Plaintiff's communication style and (2) based his impression on Plaintiff's phrases, mannerisms, and demeanor during the interview.

Urbinati's treatment of other older and younger employees further weakens Plaintiff's theory of unlawful stereotyping.  Lenny Zampaglione is 78 years old, yet Urbinati did not stereotype him as lacking assertiveness.  Quite the contrary, Urbinati described Zampaglione and the other MPCC superintendents as "yellers, screamers," "rough around the edges," "very demanding," "I got to have it now, I can't wait until tomorrow," and, to paraphrase, too assertive or forceful for Plaintiff's communication style.  Similarly, Urbinati concluded that Gawendo, a 64-year-old, was "strong, gruffy [*sic*]," "assertive," and "no nonsense."  Urbinati looked for the same qualities when interviewing Fitzmaurice and Cardinale, who were substantially younger

14

than Plaintiff.  It is precisely this type of substantive and individualized assessment that

antidiscrimination laws seek to encourage.  *See Blackwell v. Cole Taylor Bank*, 152 F.3d 666,

672 (7th Cir. 1998) ("To evaluate an individual worker or a group of workers as lacking energy,

initiative, commitment, imagination, flexibility, or other desired characteristics is not to indulge

in age stereotypes, and is indeed the kind of evaluative approach that the antidiscrimination laws

seek to encourage.").

Plaintiff's next twistification is that Urbinati "conceded" that Plaintiff communicated

clearly during the interview, supposedly exposing Urbinati's "disingenuous[ness]."  Urbinati's

concern with Plaintiff as a candidate was whether Plaintiff's communication style and demeanor

would make him a successful Senior Project Manager at MPCC.  That is different from whether

Plaintiff can communicate clearly in an interview setting.  An employer has the right to choose

which qualifications to emphasize in selecting employees.  *See Scaria v. Rubin*, 117 F.3d 652,

654 (2d Cir. 1997) ("As between experience and education, the IRS elected to value the first over

the second in filling the job, and there is nothing to show that this value judgment was

pretextual.").  Whether Plaintiff was "professional and competent," as Plaintiff asserts, is not at

issue.  (Pl.'s Opp. at 23 n.9.)  Clearly Urbinati wanted someone "gruffy [*sic*]" and "forceful."

Subjectivity notwithstanding, what is at issue is not the wisdom of the employer's decision, but

whether it is a lie.  *Byrnie*, 243 F.3d at 106 ("[W]e are not a super-personnel department . . . .");

*see also Chiang v. Donahoe*, 579 F. App'x 39, 42 n.1 (2d Cir. 2014) (summary order) (same);

*Ghent v. Moore*, 324 F. App'x 55, 57 (2d Cir. 2009) (summary order) (same); *Skiff v. Colchester

Sch. Dist.*, 316 F. App'x 83, 84 (2d Cir. 2009) (summary order) (same).

Nor is there evidence that Defendants' dishonesty justification was pretextual.  It is

undisputed that (1) Plaintiff described himself as the "heartbeat" and "nuts and bolts" of James A

Jennings, Co., (2) Plaintiff was let go from James A. Jennings, Co., and (3) Plaintiff asked Urbinati for a salary between $65,000 and $95,000.[6]  Urbinati was well within the bounds of reason to sense that something did not add up.  Plaintiff's subjective motivation for offering a low salary, which he did not communicate to Urbinati, is irrelevant.  The N.Y. Department of Labor publication on successful interview strategies that Plaintiff claims to have relied on is also entirely irrelevant.

Perhaps hoping to stanch the flow of life force from his lawsuit, Plaintiff posits that Defendants' proffered reasons have been "inconsistent" and have "shift[ed]" over time, indicating pretext.  Inconsistency can evidence pretext, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013), but any seeming inconsistencies here unravel under scrutiny.  Urbinati never told Plaintiff why he did not get the job.  Defendants' very first explanation, which they proffered in the NYSDHR proceeding, was that Plaintiff failed to demonstrate the requisite communication skills and demeanor in his interview.  In the instant proceeding, Defendants argue that they rejected Plaintiff because of Urbinati's impression of Plaintiff—e.g., that Plaintiff's communication style was ill-suited to MPCC, that Plaintiff lacked the requisite assertiveness, and that Plaintiff presented as "unsure of himself."  These observations are entirely consistent with, albeit more specific than,[7] Defendants' initial position in the NYSDHR proceeding.  Urbinati's testimony that Plaintiff did not have issues communicating clearly in the interview is an obvious red herring, for the reasons explained above.  Even the dishonesty

---

[6] Plaintiff tries to analogize this to rejecting an applicant for being "overqualified," but to no avail.  Courts are justifiably suspicious when an employer claims to have rejected an applicant for being overqualified and no other concrete facts support the rejection.  *See Taggart v. Time, Inc.*, 924 F.2d 43, 47 (2d Cir. 1991).  But Defendants never claimed to have rejected Plaintiff for being overqualified.  Quite the opposite; Urbinati suspected that Plaintiff was *less* qualified than he claimed to be.  Dishonesty is different, and is a legitimate, nondiscriminatory basis for rejecting an applicant.  The analogy is inapt.

[7] Plaintiff faults Defendants for proffering reasons that are more specific in this proceeding, yet in the same breath terms those reasons too "vague and conclusory" to rebut.

justification, while not specifically mentioned in the NYSDHR proceeding, is not so far removed from Defendants' prior assertions to suggest pretext.

Absence of pretext aside, there is no other evidence that age discrimination impacted Urbinati's decision. As explained above, Urbinati hired someone substantially the same age as Plaintiff. No reasonable jury could conclude that Urbinati discriminated on the basis of age. Urbinati's age-related questions and comments during the interview do not alter this conclusion because they demonstrate only a concern about retirement, which is an economic consideration and a lawful one. Even if the questions and comments were sufficient to raise an inference of discrimination at the *prima facie* stage, which they are not, the comments would still be insufficient to demonstrate that Defendants' proffered reasons were pretextual or that age discrimination was the but-for cause of the failure to hire. *See Buompane v. Citibank, N.A.*, No. 00 CIV. 7998(DLC), 2002 WL 603036, at *15 (S.D.N.Y. Apr. 18, 2002). Therefore, the failure to hire claim must be dismissed.

## II.      Defendants Are Entitled to Summary Judgment on Plaintiff's Retaliation Claim

Defendants are entitled to summary judgment on Plaintiff's retaliation claim because the record precludes any showing of a causal connection between Plaintiff's NYSDHR filing and the adverse employment decision. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (explaining that to establish a *prima facie* case of retaliation a plaintiff must show: "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action").

The undisputed evidence establishes that Urbinati decided not to hire Plaintiff before receiving notice of Plaintiff's protected activity. On September 6, 2011, more than six weeks after Plaintiff's interview, Defendants first received notice of Plaintiff's protected activity (i.e.,

17

the NYSDHR charge).  No reasonable jury could conclude that Plaintiff was still being considered given that Urbinati told Plaintiff that he would contact him with a decision within a week, but instead continued to publicly solicit applications for the position for the next six weeks without reaching out to Plaintiff.  Urbinati testified that he decided not to hire Plaintiff within a few days after the interview and even communicated that decision to Ms. Cornett on or about July 27, 2011.

Plaintiff attempts to sidestep this evidence by citing a letter that MPCC submitted in the NYSDHR proceeding.  The letter is dated October 7, 2011, and in it MPCC asserts, *inter alia*, that "there are no allegations to . . . establish that [Plaintiff] suffered an adverse employment decision," and that:

> Nowhere does [Plaintiff] allege that MPCC rejected his application or hired a candidate outside his protected class for the Senior Project Manager position.  To date, MPCC has neither rejected [Plaintiff's] application nor filled the Senior Project Manager position with any candidate, let alone a candidate under the age of 40.  Any argument that MPCC constructively rejected [Plaintiff's] application by failing to respond to [Plaintiff's] July 21, 2011 e-mail is meritless in light of the fact that MPCC has not hired a new Senior Project Manager since [Plaintiff's] interview.  Accordingly, [Plaintiff] cannot satisfy the third element of his age discrimination claim as there are no facts to establish that he suffered an adverse employment decision.

(Sapir Decl. Ex. H at 3-4.)  The letter does not directly state that Plaintiff was still being considered for the position as of the date of the letter.  The language "MPCC has neither rejected [Plaintiff's] application" is imprecise, and in the context of the rest of the letter, it tolerates the interpretation that MPCC has simply not communicated a rejection to Plaintiff.  Even so, the letter avers that Plaintiff "was not qualified for the Senior Project Manager position based upon Mr. Urbinati's evaluation of [Plaintiff's] poor communication abilities and demeanor during the interview."  (*Id.* at 3.)  Given internal inconsistency and the lack of specificity, the letter is at best ambiguous and is insufficient to raise a genuine dispute of fact.

In view of the totality of the evidence, only a tortured reading of the record could support the inference that Plaintiff was still being considered for the position when Defendants received notice of Plaintiff's NYSDHR filing.  Plaintiff thus cannot establish a causal connection between Plaintiff's NYSDHR filing and his rejection.  The retaliation claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED.  The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 37 and 45, enter judgment in favor of Defendants, and close this case.

Dated:   July 16, 2015                                                  SO ORDERED:
         White Plains, New York

                                                              _____
                                                              NELSON S. ROMÁN
                                                              United States District Judge

19